ROTOTRON CORPORATION,
Plaintiff-Appellant,

v.

LAKE SHORE BURIAL VAULT CO.,
INC. and Leo McQuestion,
Defendants-Appellees.

No. 83-1064.

United States Court of Appeals,
Seventh Circuit.

Argued June 10, 1983.

Decided July 29, 1983.

Alan K. Roberts, Posnack, Roberts, Cohen & Spiechens, New York City, for plaintiff-appellant.

Ronald E. Barry, Frisch, Dudek & Slattery, Ltd., Milwaukee, Wis., for defendants-appellees.

Before PELL and BAUER, Circuit Judges, and DUMBAULD, Senior District Judge.*

DUMBAULD, Senior District Judge.

The case at bar involves the interplay between contract and patent law. Plaintiff-Appellant Rototron Corporation (Rototron) seeks to enforce a "secrecy agreement" forbidding use of Rototron's process of "rotational molding" of plastic products without paying royalties under a license agreement with Rototron, and also requiring Lake Shore to keep the process secret.[1] The basic feature of the process is use of cheap equipment, several units of which can be operated simultaneously, by the use of unskilled labor. Costs of production are thus substantially reduced.

Rototron's plant is strictly guarded and access permitted only to signers of the se-

---

* The Hon. Edward Dumbauld, Senior U.S. District Judge of the Western District of Pennsylvania, sitting by designation.

1. Rototron sought to hold Lake Shore in contempt for inadequate protection of the process in violation of a temporary injunction. The District Court, 553 F.Supp. 691, properly held that Lake Shore's conduct was casual, not calculated or contumacious, and would probably not result in communication of anything of a secret nature to the ordinary passer-by.

crecy agreement. Lake Shore signed the agreement. Its vice-president, defendant Leo McQuestion, upon seeing the Rototron plant, like Saul on the Damascus road, realized that a great light had shone upon him and that he had after an arduous quest found the long desired method of profitably producing plastic distribution boxes for septic tanks. Lake Shore was not informed by Rototron that any existing patents were in force relating to the process used in the plant. But subsequently a search by counsel revealed the existence of six patents held by Rototron, which in counsel's opinion were not infringed by the process Lake Shore used. Lake Shore after temporizing deceptively for some time refused to execute the licensing agreement or pay royalties to Rototron. Lake Shore continued to use the process successfully, except that it was unable to make septic tanks themselves by rotational molding.

 The trial court found as a fact that Rototron's patents "do disclose all of the elements of the Rototron process so as to place the process within the public treasury of knowledge," citing particularly two of the patents in evidence (DX–2 and DX–5). This conclusion cannot be disregarded as "clearly erroneous," even though part of the efficacy of the process is due to the arrangement of the equipment (like the layout of a kitchen) and other incidental unpatented obvious practices.

Therefore the Rototron process cannot be regarded as a trade secret, because the grant of a patent automatically constitutes full disclosure of the patented process. As stated in the District Court's opinion, "In order to foster invention and reward those who expand human knowledge, our nation grants a monopoly for the life of a patent in the invention or process disclosed in the claim. But the price for this reward is full disclosure. The knowledge passes into the public domain, and thereafter the patentee's only protection is that afforded under the patent law."[2] These provisions of federal patent law prevail over any inconsistent State remedies. *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 230–31, 84 S.Ct. 784, 788, 11 L.Ed.2d 661 (1964). Hence Rototron had no protectable trade secret after issuance of its patents on the rotational molding process.

Accordingly, the judgment of the District Court is

AFFIRMED.

---

2. After issuance of a patent "The key element of secrecy is gone;" and secrecy is "the *sine qua non* of a trade secret." *Forest Laboratories, Inc. v. Formulations, Inc.*, 299 F.Supp. 202, 207 (E.D.Wis.1969); aff'd *sub nom. Forest Laboratories v. Pillsbury Co.*, 452 F.2d 621, 624 (7th Cir.1971) ["the element of secrecy evaporated with the issuance of the patent"]. See also *Wheelabrator Corp. v. Fogle*, 317 F.Supp. 633, 636–39 (W.D.La. Shreveport Div.1970).